IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
___

RUSLAN MALOVANYI,

                Plaintiff,

   v.

NORTH AMERICAN PIPE CORPORATION,

                OPINION & ORDER

                Defendant and
                Third-Party Plaintiff,        15-cv-548-jdp

   v.

MOONLIGHT TRANSFER INC. and
BLUE AND YELLOW TRANSPORTATION, INC.,

                Third-Party Defendants.
___

      Plaintiff Ruslan Malovanyi is a truck driver who was picking up a load of plastic pipe from defendant North American Pipe Corporation (NAPCO). Malovanyi was injured when a bundle of pipe fell from his truck while he was securing the load, which had been placed on his truck by a NAPCO employee. Malovanyi contends that the NAPCO employee had improperly placed the bundle, and he brings claims against NAPCO for negligence, negligence per se, and gross negligence. Dkt. 23. NAPCO brings claims against third-party defendants, Moonlight Transfer Inc., which brokered the delivery and hired Blue and Yellow Transportation, Inc., to pick up and deliver the pipe.

      NAPCO moves for summary judgment on Malovanyi's claims. Dkt. 39. And both Malovanyi and NAPCO have filed motions concerning Malovanyi's late-disclosed liability expert. The court will grant NAPCO's motion to strike Malovanyi's expert, and it will grant NAPCO's motion for summary judgment. The court will apply the *Savage* rule, under which

Malovanyi, not NAPCO, was responsible for securing the load. In light of the court's decision on Malovanyi's claims, NAPCO's claims against the third-party defendants are apparently moot, although the court will give NAPCO the opportunity to inform the court whether those claims should be dismissed.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

NAPCO manufactures plastic pipe. In late 2014, NAPCO arranged to transport a load of pipe from its Janesville, Wisconsin facility to two destinations outside of Wisconsin. NAPCO contacted Moonlight to transport the load, and Moonlight assigned the load to Blue and Yellow. Blue and Yellow assigned one of its independent contractors to do the job: Malovanyi.

Malovanyi was an inexperienced driver. Malovanyi had received his commercial driver's license on July 30, 2014. But when Malovanyi applied to work for Blue and Yellow, he stated, falsely, that he had worked as a commercial driver since July 2012. Malovanyi claims this was merely a mistake; NAPCO characterizes the misrepresentation as more nefarious. Regardless, as of the date of the accident, December 1, 2014, Malovanyi had been driving a commercial vehicle for only four months.

Malovanyi arrived at the Janesville facility to pick up the pipe. NAPCO's employee, Larry Lewis, directed Malovanyi to several locations in the yard, and Lewis loaded pipe with a fork lift onto Malovanyi's trailer at each stop. Each time Lewis placed pipe on the trailer, Malovanyi strapped it down before moving to the next location. NAPCO personnel were not responsible for securing the load.

In total, Lewis loaded four stacks of pipe, two forward stacks (one on the driver's side, one on the passenger's side), and two rearward stacks (again, one on the driver's side, one on the passenger's side). Lewis told Malovanyi to secure the load after he placed each stack of pipe; but nothing in the record indicates that Lewis—or any other NAPCO employee—told Malovanyi how to approach or secure the load.

Malovanyi knew the proper procedure for securing a load of pipe, which required throwing straps over a base layer of pipe—sometimes called the belly layer—before throwing straps over the top of the stack. Once all straps are in place, Malovanyi knew to tighten the top straps before tightening the bottom ones. The steps are as follows:

1. Throw four straps (two over the forward part of the load, two over the rear) over the bottom layer before stacking the next layer on top. Do not tighten the bottom straps.
2. Load the top layer to complete loading.
3. Throw four straps over the top of the load (again, two over the forward part of the load, two over the rear) from the passenger's side of the trailer.
4. Walk to the driver's side of the trailer.
5. Tighten the top straps first, to secure the load from the top.
6. Tighten the bottom straps over the bottom layer.

Malovanyi knew that he needed to tighten the top straps first, "[t]o make sure that the upper portion of the pipes would not fall." Dkt. 77, ¶ 19 (quoting Dkt. 43 (Malovanyi Dep. 96:23-24)).

But Malovanyi did not follow these steps on December 1: Malovanyi tightened the bottom straps before Lewis loaded the top layer.[1] The passenger's side bottom layer was taller than the driver's side stack, so the taut bottom straps were at an angle, sloping down toward the driver's side. By Malovanyi's account, Lewis continued to load the trailer; he set a bundle on top of the taut bottom straps. As Lewis moved his forklift away from the trailer, the bundle was left sitting at an angle atop the straps. (NAPCO disputes that this is what happened, contending that it would not be possible to set the pipe bundle down atop the sloped straps. But NAPCO accepts Malovanyi's version of events for purposes of summary judgment.) Then Lewis left the area.

When Malovanyi approached the driver's side of the trailer, the angled bundle slid off the trailer, striking Malovanyi. Malovanyi claims that he did not see that the top bundle was sitting at an angle. Malovanyi did not ask Lewis or any other NAPCO personnel to reload the trailer or adjust the load before he approached it.

Pictures of the scene immediately after the accident confirm that no top straps had been thrown over the load and that the bottom straps had been tightened.

---

[1] Malovanyi attempts to dispute NAPCO's proposed finding of fact that "Malovanyi had tightened those two bottom straps at another location in the yard, and then he moved the trailer to the accident location." *Id.* ¶ 23. But he does not cite any evidence that creates a dispute. The court's summary judgment procedures provide that "[t]he court will conclude that a proposed fact is undisputed unless the responding party explicitly disputes it and either identifies contradictory evidence in the record, or demonstrates that the proponent of the fact does not have admissible evidence to support it." Dkt. 12, at 10. Malovanyi has not adequately disputed the proposed fact. And NAPCO cites admissible evidence to support that fact: Malovanyi testified during his deposition that at some point before the accident, he tightened those straps. Dkt. 43 (Malovanyi Dep. 63:16-20, 69:2-15).

The court has subject matter jurisdiction over Malovanyi's claims pursuant to 28 U.S.C. § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000.

ANALYSIS

**A. Motion to strike**

The court begins with NAPCO's motion to strike Malovanyi's liability expert. Dkt. 56. Early in the case, Malovanyi disclosed his liability theory and his liability expert, Brooks Rugemer. NAPCO, understandably, built its defense in response. But then Malovanyi changed experts. On November 30, 2016, more than a year after he first disclosed Rugemer's opinions, Malovanyi disclosed a new liability expert, Adam Grill, with new opinions.[2]

Malovanyi disclosed Rugemer's report on October 6, 2015, before the court held its preliminary pretrial conference. The Preliminary Pretrial Conference Order required NAPCO to disclose its responsive liability expert not later than June 17, 2016; Malovanyi was required to disclose his rebuttal report not later than August 19, 2016. Dkt. 12, at 2. The order explicitly provides that "[f]ailure to comply with these deadlines and procedures could result in the court striking the testimony of a party's experts pursuant to Rule 37." *Id.* On August 23, 2016, Malovanyi de-designated Rugemer, citing unspecified "professional reasons." Dkt. 56-6, at 1.

Malovanyi's first attorney had a medical emergency, and the court agreed to reset a number of deadlines. But the Amended Scheduling Order explicitly notes that "all of plaintiff's expert disclosure deadlines had passed before his attorney fell ill. Therefore, the court did not

---

[2] The court will grant Malovanyi's motion to supplement his opposition to the motion to strike. Dkt. 86 and Dkt. 87.

set new expert disclosure deadlines." Dkt. 55. And the court told Malovanyi that he would need to seek and obtain leave of the court before attempting to disclose or use expert witnesses in this suit. *Id.* (By that point, Malovanyi had jettisoned Rugemer.) But Malovanyi ignored the court's instructions and disclosed a new liability expert with new opinions on November 30, 2016, without moving for leave to do so.

Federal Rule of Civil Procedure 26(a)(2)(D) provides that a party must make its expert disclosures "at the times and in the sequence that the court orders." Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." These sanctions are "automatic and mandatory . . . unless [the] non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

After reviewing Malovanyi's explanations for his late disclosure of a new expert, the court is not convinced that the late report was justified or harmless. Malovanyi contends, unconvincingly, that the November 30, 2016 disclosure was actually *timely*. He cites Rule 26(a)(2)(D), which provides that parties must make expert disclosures "at least 90 days before the date set for trial or for the case to be ready for trial." But this rule does not govern here. Expert disclosures are due 90 days before trial "[a]bsent . . . a court order." *Id.* As discussed, parties must make their expert disclosures "at the times and in the sequence that the court orders." *Id.* Period. Malovanyi's November 30, 2016 disclosure was untimely. Mere weeks before he produced the new report, the court explicitly warned him that his time for disclosing experts had come and gone.

Malovanyi contends that even if the disclosure were untimely, it was harmless. Malovanyi contends that NAPCO has had the opportunity to depose the new expert and could

6

have its expert prepare a supplemental report; as a result, NAPCO is not prejudiced. But Malovanyi's disclosure came well after NAPCO had secured and disclosed its own expert and well after NAPCO had moved for summary judgment. The schedule that Malovanyi proposes—where he is permitted to disclose experts at will, provided he leaves enough time in the schedule to allow NAPCO to depose the expert and secure supplemental responsive opinions—is not the schedule that the court set in this case. *See Finwall v. City of Chicago*, 239 F.R.D. 494, 501 (N.D. Ill.), *objections overruled*, 239 F.R.D. 504 (N.D. Ill. 2006) ("Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen discovery.").

Malovanyi also contends that the new expert merely adopts the old expert's liability theory, so NAPCO's expert's report and motion for summary judgment would not look any different had it had Malovanyi's new expert's report earlier. He argues that he has pursued the same liability theory all along: that NAPCO's loading practices caused the accident. "Defendant's experts are going to reassert the same defense, unchanged, because that Defense remains applicable to any theory of negligence, new or old." Dkt. 61, at 5. But Malovanyi is overgeneralizing here. In reality, the new Grill report offers new opinions. Rugemer opined that NAPCO caused the accident by loading the pipe that crushed Malovanyi in a dangerous manner, namely, at an angle. Dkt. 56-1, at 5. But Malovanyi's new expert, Adam Grill, opines that a "latent defect" in NAPCO's loading practices caused the accident. Dkt. 57, at 7. True, both Grill and Rugemer opined that NAPCO was responsible for the accident. But the opinions offer alternative theories. In fact, it appears that Malovanyi propounded Grill's latent defect theory to create fact issue at summary judgment. NAPCO briefed summary judgment assuming Malovanyi's theory that the pipe that fell and injured him were placed on a slope, over taut straps, as Malovanyi testified during his deposition. Rugemer assumed these facts in his report.

7

To allow Malovanyi his late-disclosed liability expert would undoubtedly prejudice NAPCO: NAPCO would be required to start over to defend a latent defect theory instead of the approach taken by Rugemer.

Malovanyi has not shown that the late disclosure was harmless, and he makes no attempt to show that it was justified. The motion to strike is granted. The fact that NAPCO has deposed Grill and asked Malovanyi to supplement his expert disclosures does not eliminate the prejudice to NAPCO, which has prepared as best it could in the event the court did not strike Grill's report.[3]

**B. Summary judgment**

The court turns to NAPCO's motion for summary judgment. Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing NAPCO's motion for summary judgment, the court construes all facts and draws all reasonable inferences in Malovanyi's favor. *Id.* at 255. "[T]he non-moving party does not bear the burden of *proving* his case; the opponent of summary judgment need only point to evidence that can be put in an admissible form at trial, and that, if believed by the

---

[3] NAPCO moved to strike Grill's report from the summary judgment record for other reasons: the report does not comply with Rule 56(c), it relies on inadmissible hearsay, and it is untimely. Dkt. 78. The court will deny the motion as moot. The court will also deny Malovanyi's motion to supplement his opposition to that second motion to strike as moot. Dkt. 91. Finally, NAPCO took a third swing at Grill, in a *Daubert* motion, and that motion is also moot. Dkt. 90. NAPCO's substantive criticism of Grill has at least arguable merit, but the court need not reach the issue because Grill's report is untimely.

fact-finder, could support judgment in his favor." *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 966 (7th Cir. 2011).

Malovanyi brings claims for negligence, negligence per se, and gross negligence. To prove negligence under Wisconsin law, a "plaintiff must prove four elements: '(1) [a] duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.'" *Martindale v. Ripp*, 2001 WI 113, ¶ 33, 246 Wis. 2d 67, 629 N.W.2d 698 (quoting *Rockweit v. Senecal*, 197 Wis. 2d 409, 541 N.W.2d 742, 747 (1995)).[4] But NAPCO points out that federal regulations—the Federal Motor Carrier Safety Regulations (FMCSR)—supplement common law negligence principles and inform the court's inquiry here. The FMCSR apply to "all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce." 49 C.F.R. § 390.3(a)(1). NAPCO contends that under the FMCSR and applicable motor carrier case law, it is not liable for the accident because any "defect in the commercial load" was open and obvious. Dkt. 40, at 1. Because the defect was open and obvious, NAPCO, the shipper, owed no duty of care to Malovanyi, the motor carrier's driver. *See* 49 C.F.R. § 376.2(k) (shipper); 49 U.S.C. § 13102(14) (motor carrier).[5]

NAPCO relies on what it calls the "majority rule": the *Savage* rule. In *United States v. Savage Truck Line, Inc.*, the Fourth Circuit held that "the duty rests upon the carrier to see that the packing of goods received by it for transportation is such as to secure their safety." 209

---

[4] The parties agree that Wisconsin substantive law applies, per *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[5] A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The statute does not distinguish between employees and independent contractors.

9

F.2d 442, 445 (4th Cir. 1953). "The primary duty as to the safe loading of property is . . . upon the carrier." *Id.* That said, the shipper is liable if it "assumes the responsibility of loading." *Id.* And in that case, "the general rule is that [the shipper] becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier." *Id.* If a loading defect is apparent, the carrier is liable regardless of the shipper's negligence. *Id.*; *Decker v. New England Pub. Warehouse, Inc.*, 2000 ME 76, ¶ 9, 749 A.2d 762 (adopting *Savage*).

*Savage* is "the prevailing law followed by most jurisdictions" when it comes to the duties of shippers and common carriers. *Vargo-Schaper v. Weyerhaeuser Co.*, 619 F.3d 845, 848 (8th Cir. 2010). "The policy behind the *Savage* rule reflects the practice and understanding in the trucking industry as to carriers having final responsibility for the loads they haul." *Id.* at 849. The rule makes sense and it reflects wide-spread judicial understanding of the unique relationship between motor carriers and shippers. It is informative here.

Wisconsin has not explicitly adopted the *Savage* rule, but the rule is not inconsistent with Wisconsin's negligence law. In an ordinary negligence case in Wisconsin, courts generally presume that everyone owes the world an ordinary duty of care and apportion fault accordingly. *See Rockweit*, 541 N.W.2d at 747. Malovanyi appears to suggest that the *Savage* rule would fly in the face of Wisconsin's ordinary negligence law. But most courts to consider the question have held that *Savage* is not inconsistent with comparative negligence.[6] And, more to the point,

---

[6] In *Spence v. ESAB Group, Inc.*, the Third Circuit held that the *Savage* rule is not inconsistent with a comparative fault regime. It pointed to *Savage*'s use of the word "primary," explaining that *Savage* does not place the *exclusive* duty to secure cargo with the carrier, but rather recognizes that the carrier "has the *primary* obligation to assure that the cargo is loaded in a secure manner." 623 F.3d 212, 220 (3d Cir. 2010). Thus, "*Savage* acknowledged that a shipper may have liability when an accident results from movement of goods during transport if the shipper created a non-apparent condition that caused the load to shift." *Id.*; *see also Franklin*

10

Wisconsin has indicated a willingness to adopt the rule. In *Allis-Chalmers Mfg. Co. v. Eagle Motor Lines, Inc.*, 55 Wis. 2d 39, 198 N.W.2d 162 (1972), the Wisconsin Supreme Court took a *Savage*-like approach without explicitly citing *Savage*. In that case, the court held that the general rule is that a carrier is liable for injury to property during transit, but that there is an exception "if the carrier establishes the defect it claims existed was a hidden or concealed defect." *Id.* at 166. The court explained that "a carrier may refuse to accept goods which are not properly packed, (and) if the fact of improper packing is known to the carrier, or apparent upon ordinary observation, but it accepts the goods notwithstanding" that, it is liable for the resulting injury. *Id.* (quoting 23 Am. Jur. 2d *Carriers* § 529). But if the improper packing "is not apparent to the ordinary observation of the carrier," then the carrier is not liable for "injury resulting solely from such defective shipping condition." *Id.* (quoting 23 Am. Jur. 2d *Carriers* § 529).

And in *Locicero v. Interpace Corp.*—the only Wisconsin case that has cited *Savage*, as far as the court can tell—the Wisconsin Supreme Court noted that *Savage* "illustrates that motor carrier safety regulations impose a clear duty on the carrier to secure the load safely but that they do not relieve other parties, such as the shipper, from common law or contractual liability

---

*Stainless Corp. v. Marlo Transp. Corp.*, 748 F.2d 865, 870-71 (4th Cir. 1984) (holding that contribution between the defendant carrier and the defendant shipper was appropriate under *Savage* and that *Savage* itself contemplated contribution); *Kucharski v. Orbis Corp.*, No. 14-cv-5574, 2017 WL 1806581, at *8-9 (N.D. Ill. May 5, 2017) (adopting the *Savage* rule in a case applying Illinois law even though Illinois is a comparative negligence state).

And in *Aragon v. Wal-Mart Stores E., LP*, 924 F. Supp. 2d 1066, 1072-73 (E.D. Mo. 2013), the Eastern District of Missouri determined that Missouri, a comparative-negligence state, would adopt *Savage* to determine whether the shipper has a duty to safely secure loads, explaining that "since comparative fault has been adopted, the Missouri Supreme Court would now follow" *Savage*. Because the defects were open and obvious, the court granted summary judgment in the defendant shipper's favor.

11

for causing an unsafe load." 83 Wis. 2d 876, 266 N.W.2d 423, 427 (1978). It held that Wisconsin law imposes the same statutory duty on the carrier, but without relieving the shipper from liability or a comparative share of damages for a breach of the common law duty of care *owed to third parties.* Applying that rule to the facts of the case, the court held that the shipper did not breach its duty of care when it required the carrier to use a certain method of securing the load.

If it hasn't already, Wisconsin would likely adopt the *Savage* rule and use it at the summary judgment stage. And so this court will follow suit.

The undisputed facts show that NAPCO assumed responsibility for loading Malovanyi's trailer, so it is liable for only latent or concealed defects in the load that Malovanyi could not have discerned by ordinary observation. "Two factors are taken into account in determining whether a defect is latent or open and obvious: the experience of the carrier and the presence or absence of any assurances by the shipper regarding the security of the load." *Aragon v. Wal-Mart Stores E., LP*, 735 F.3d 807, 810 (8th Cir. 2013). Under Malovanyi's version of events (the version of events that the court adopts here), the loading hazard was plainly obvious to any lay person: the pipe bundle was sitting precariously on a slope. And although Malovanyi was an inexperienced driver, he knew that he had tightened the bottom straps at the front of the trailer—contrary to protocol—when he approached the load immediately before the accident. Not only did that move go against the proper procedure for securing the load (as Malovanyi well knew), but it created an obviously sloped surface over the driver's side stack. When Lewis placed the top stack over the taught straps, they very apparently sat at an insecure angle.[7] Tellingly, Malovanyi pled that "[a]n ordinary prudent person could have and should

---

[7] The court, like NAPCO, finds it implausible that this is actually what happened. It seems

have foreseen that harm might result from not properly loading and securing the PVC pipes of various diameters and on a steep angle upon Plaintiff's trailer," and that, "[g]iven these circumstances, it was clearly foreseeable that a bundle of large diameter PVC pipes when set upon a steep angle on top of a partially loaded PVC pipe bundles would fall and slide off the Plaintiff's trailer causing grave injuries to Plaintiff." Dkt. 23, ¶¶ 10-11. Malovanyi has not adduced evidence that creates a triable issue of fact on the "open and obvious" question.

And nothing in the record indicates that Lewis or any other NAPCO employee assured Malovanyi that the load was properly secured. Lewis explicitly told Malovanyi to secure the load; he did not tell him how to do so or otherwise assure him that it was good to go. *See, e.g.*, *Aragon*, 735 F.3d at 811 (holding that the plaintiff did not adduce evidence sufficient to create a triable issue of fact when he "never expressed to the shipper his lack of experience in hauling pallets of RPCs, he never inquired as to whether the load was secure, he never received assurance from Wal-Mart or IFCO that the load was secure, and he never received assurance from Wal-Mart or IFCO that the method of loading employed was safe").

The undisputed facts show that the accident was caused by an open and obvious defect in the load for which NAPCO was not liable. NAPCO is entitled to summary judgment on Malovanyi's negligence and gross negligence claims.

---

unlikely that Lewis would have been able to place a load of pipe over the taught straps, at an angle. It seems much more likely that, given the other undisputed facts, Malovanyi improperly tightened the bottom straps when he approached the trailer *after* Lewis loaded the top stack. This is especially evident because when Malovanyi approached the load just before the accident, he carried a tool for tightening straps. The top straps had not been thrown over the load at that point. Tightening the bottom straps out of order likely caused the pipe bundle to slip off the truck and strike Malovanyi. But for purposes of summary judgment, the court accepts Malovanyi's version of events.

Malovanyi's negligence per se claim based on 49 C.F.R. § 392.9(a)(1) fails, too. The FMCSR "impose a duty on the carrier to inspect cargo to confirm that it is secure before and during transport of the cargo in a commercial motor vehicle. The Safety Regulations provide two exceptions to a driver's duty to examine and secure cargo: (1) when the carrier of a sealed commercial motor vehicle has been ordered not to open the seal to inspect the cargo, and (2) when the commercial vehicle has been loaded in a manner that makes inspection of its cargo impracticable." *Id.* (citing 49 C.F.R. § 392.9(a)(1), (b)(1)-(4)). In other words, the FMCSR hold the driver responsible for inspecting the load with two exceptions. Malovanyi has not adduced any evidence that either exception applies: the cargo was not sealed off, and, as discussed, Malovanyi had a clear view of the defect in the load before he approached the trailer. Malovanyi has not identified a statutory basis for holding NAPCO liable per se.

The court will briefly address Malovanyi's remaining arguments in opposition to summary judgment.

The *Savage* rule applies even though the carrier was not in transit when the accident occurred. First, Malovanyi does not cite any case law for the proposition that the *Savage* rule applies only when the carrier is in transit. Second, *Aragon* applied the *Savage* rule to a failure to inspect before leaving the pickup location. And third, the FMCSR provide that the carrier's duties attach after cargo is loaded; the regulations do not say anything about being in transit. *See* 49 C.F.R. § 392.9; *see also Patton v. Nissan N. Am., Inc.*, 143 F. Supp. 3d 468, 471 (S.D. Miss. 2015) ("The Federal Motor Carrier Safety Regulations explain in 49 C.F.R. § 392.9 that after cargo is loaded, a commercial driver has a duty to inspect, properly distribute, and secure it . . . .").

The *Savage* rule applies in personal injury cases. *See Decker*, 2000 ME 76, ¶ 10 ("In subsequent years, courts extended the *Savage* reasoning to include personal injuries to employees of carriers caused by the negligent loading of goods.").

NAPCO is not subject to the FMCSR in this case. Malovanyi's argument that a forklift is a motor vehicle and that, as a result, NAPCO acted as the motor carrier as it loaded the trailer is nonsensical and strained. The undisputed facts are clear that Blue and Yellow was the motor carrier, that Malovanyi was its driver and agent, and that NAPCO was the shipper during the underlying events. To get technical about it, a motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). The FMCSR apply to "all employers, employees, and commercial motor vehicles that transport property or passengers *in interstate commerce*." 49 C.F.R. § 390.3(a)(1) (emphasis added). Malovanyi has not adduced any evidence that shows that NAPCO operated its forklift in interstate commerce when it transported the pipe.

The court will grant NAPCO's motion for summary judgment and dismiss all of Malovanyi's claims. NAPCO's claims against the third-party defendants are apparently moot. NAPCO has a short deadline to inform the court whether it wishes to pursue those claims or the court can dismiss them as moot.

ORDER

IT IS ORDERED that:

1. Plaintiff Ruslan Malovanyi's motions to supplement, Dkt. 86 and Dkt. 87, are GRANTED.

2. Defendant North American Pipe Corporation's motion to strike plaintiff's late-disclosed liability expert, Dkt. 56, is GRANTED.

3. Defendant's motion to strike Exhibit B to plaintiff's response to defendant's motion for summary judgment, Dkt. 78, is DENIED as moot.

4. Defendant's *Daubert* motion, Dkt. 90, is DENIED as moot.

5. Plaintiff's motion to supplement, Dkt. 91, is DENIED as moot.

6. Defendant's motion for summary judgment, Dkt. 39, is GRANTED.

7. Defendant should inform the court whether it wishes to maintain its third-party claims against Moonlight Transfer Inc. and Blue and Yellow Transportation, Inc. by July 18, 2017, or the court will dismiss the claims as moot and close the case.

Entered July 12, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge